**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| COLLEEN VASQUES<br><br>          Plaintiff,<br><br>v.<br><br>MASS GENERAL BRIGHAM INC.<br><br>          Defendant. | Case No. |

## COMPLAINT AND JURY DEMAND

AND NOW COMES Plaintiff Colleen Vasques ("Plaintiff"), by and through her undersigned counsel, and brings this Complaint seeking legal and equitable relief for disability discrimination and wrongful termination by Defendant Mass General Brigham ("MGB" or "Defendant") in violation of the Americans with Disabilities Act of 1990 ("ADA"), the ADA Amendments Act of 2008 ("ADAAA"), and pendent state law claims arising under the provisions of the laws of this Commonwealth, to wit, the Massachusetts Fair Employment Practices Act (M.G.L. c. 151B) and the Massachusetts Employment Rights Act ("MERA"), stating as follows:

### PARTIES

1.      Plaintiff Colleen Vasques is an adult female resident of Massachusetts with an address of 12 Colonial Drive, Norton, MA 02766.

2.      Defendant Mass General Brigham ("MGB") is a healthcare provider incorporated in Massachusetts with addresses registered with the Secretary of State of and headquartered at 399

Revolution Drive, Suite 275, Somerville, MA 02145 and 800 Boyleston Street, Suite 1150, Boston, MA 02199.

## ADMINISTRATIVE PROCEDURES

5.      Ms. Vasques filed a Charge of Discrimination at Charge No. 523-2022-03397 incorporated fully herein with the Equal Employment Opportunity Commission ("EEOC") on August 16, 2022, and the EEOC mailed Ms. Vasques her right to sue letter on September 30, 2022.

6.      Ms. Vasques initiates the instant lawsuit by filing this complaint within 90 days of receipt of the right to sue letter; thus, this action is commenced within the relevant EEOC time limitations and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Ms. Vasques' rights under the ADA and ADAAA. The Court has supplemental jurisdiction over Ms. Vasques' related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including employment practices alleged herein, occurred within this District.

11.      This Court has jurisdiction over Defendant, as Plaintiff worked for MGB as an audiologist at its Massachusetts Eye and Ear Associates, Inc. ("MEEA") satellite location in Weymouth, Massachusetts, and Defendant has discriminated and retaliated against Plaintiff and otherwise acted in a discriminatory and tortious manner toward Plaintiff in Massachusetts.

12.      MGB is an employer within the meaning of the ADA, ADAAA, §151B, and MERA.

## FACTUAL ALLEGATIONS

**Ms. Vasques' Employment.**

11.     At all times relevant to this Complaint, Defendant MGB operated and provided services without limitation in its Weymouth MEEA facility at 825 Main Street where Ms. Vasques worked as an audiologist.

12.     South Suburban ENT hired Plaintiff as an audiologist employee with full benefits in May 2010.

13.     Four of the five doctors from South Suburban ENT became a satellite office of MEEA in 2011.

14.     As such, Ms. Vasques began working for MEEA at the Massachusetts Eye and Ear Infirmary ("MEEI") on December 1, 2011.

15.      Agreements between MEEA and Ms. Vasques misclassifying Ms. Vasques as an independent contractor are attached hereto as *Exhibit 1* and *Exhibit 2*.

16.     In 2014, MEEA required Ms. Vasques to complete audiologist credentialing and MEEI professional staff verification paperwork, attached hereto as *Exhibit 3*, evidencing obligations of an employee.

17.     Subsequently, MGB acquired MEEA, and, as a result, Ms. Vasques became an employee of MGB being required to perform the scope of services for MGB referenced in *Attachment A of Exhibit 1* further demonstrating that Plaintiff was an employee.

18.     MGB also misclassified Ms. Vasques as an independent contractor through the agreement attached hereto as *Exhibit 4*.

19.     The scope of services which MGB required Plaintiff to perform reveal that Ms. Vasques was not free from direction and control, her activities and duties required substantially more than minimal instruction, and Ms. Vasques did not decide her hours of her service.

20.     From December 1, 2011 until November, 10, 2021, when she was wrongfully terminated, Ms. Vasques performed all roles and responsibilities of an audiologist employee for MEEA and MGB satisfactorily.

21.     Ms. Vasques received 1099s from 2015 through 2021 from MEEA and MGB attached hereto as *Exhibit 5*.

22.     In an attempt to misclassify her as an independent contractor, MGB paid Ms. Vasques for her time on an hourly basis requiring her to submit her time under Plaintiff's company name, Ears to Hear, through purchase orders attached hereto as *Exhibit 6*.

23.     Nonetheless, MGB treated Plaintiff as an employee at all times as: (a) Ms. Vasques was not free from the company's control and direction in performing audiology services, (b) the audiology services performed by Ms. Vasques were not outside the usual course of the business of MGB or MEEA, and (c) Ms. Vasques was not customarily engaged in an independently established trade, occupation, profession or business of the same nature as the service performed for MGB.

24.     In fact, Ms. Vasques devoted all her time to MGB working full time as an employee and her termination letter, dated November 10, 2021, and attached hereto as *Exhibit 7*, states in pertinent part, "Effective Nov. 10, 2021, **your employment** is terminated for non-compliance with Mass General Brigham's COVID-19 Vaccination Policy," demonstrating that Ms. Vasques' services were provided to MGB as an employee.

4

**MGB's Vaccine Mandate.**

25.    On June 24, 2021, MGB released the following mandate concerning the COVID-19

vaccine:



### Mass General Brigham

## A Message from Anne Klibanski, MD
President and CEO

View daily emails in Español, 中文, Portugu

Dear Colleagues:

Over the past 16 months we have come together as a system to care for our patients and each other as never before. Your efforts have been extraordinary and inspiring. We have administered more than 1.1 million COVID-19 tests and treated nearly 19,000 COVID-19 positive inpatients. Our researchers have worked around the clock to develop and assess new approaches to test for, treat and prevent COVID-19.

We enter this new phase of the pandemic with optimism. Community case rates, hospitalizations and deaths have plummeted as vaccination rates rise. Across the country, more than 172 million individuals have been vaccinated. These massive vaccination efforts nationally and specifically in Massachusetts have proven central to reducing the spread of the virus and saving lives. We have administered more than 450,000 vaccine doses to our patients and employees. More than 85 percent of our employees are vaccinated—one of the highest rates nationwide among healthcare systems.

The evidence of COVID-19 vaccine safety and effectiveness is overwhelming. Getting vaccinated is the single most important and responsible step each of us can take to put an end to this devastating pandemic and protect patients, families and each other.

Based on the research, data and trends, we have made the decision that we will require that **all Mass General Brigham employees be vaccinated against COVID-19 once the FDA has granted approval of one of the three vaccines. We will inform you of specific dates as soon as available**. This step to require the COVID-19 vaccine as a condition of employment is consistent with our approach to the flu vaccine requirement implemented in 2018.

**Given the safety and effectiveness of COVID-19 vaccines and the outlined mandated vaccination policy, we strongly encourage those employees who have not yet been vaccinated to do so as soon as possible.**

In taking this action to require employee COVID-19 vaccinations to protect our patients, our families and each other, Mass General Brigham joins many other leading healthcare systems across the country. It is imperative that

5

we — as a community of caregivers — ensure that our patients are being cared for in the safest clinical environment possible.

We are fully committed to supporting our colleagues who may be concerned about receiving the vaccine and have developed FAQs to help answer questions. More details on all aspects of this requirement will be provided in the coming weeks. **If you have already received a COVID-19 vaccine, you do not need to be vaccinated again, and at this time no booster shot is required.**

Consistent with our practice for other vaccines, employees will be able to request exemption for medical and religious reasons for the COVID-19 vaccine. Employees who are pregnant or who intend to become pregnant may also request an exemption.

Your incredible work through the pandemic highlights what we can accomplish when we work together as a healthcare system to care for our patients, our communities and each other every day. Thank you for joining me in getting vaccinated and for helping us to create the safest care environment possible for our patients and each other.

Anne Klibanski, MD

26.     On August 10, 2021, MGB released the following additional notification about its

mandate:



**Mass General Brigham**                                                    August 10, 2021

## A Message from Anne Klibanski, MD
### President and CEO

View daily emails in Español, 中文, Português

Dear Colleagues:

Thank you for your outstanding service to our patients and their families, and your continued support of one another during these challenging times.

COVID-19 cases have increased in Massachusetts and across the nation as the highly transmissible delta variant surges. Currently, the vast majority of cases, hospitalizations and deaths are occurring in unvaccinated individuals.

COVID-19 is a largely preventable disease and vaccination is a critical step we *all* need to take to help stop this current surge in cases. Over 348 million doses have been administered in the United States to date and more than 165 million Americans have been fully vaccinated. Although the new delta variant is more contagious than others, available COVID-19 vaccines are safe and effective at preventing serious illness and death from COVID-19.

As COVID-19 cases increase nationwide, Mass General Brigham joins other leading healthcare systems in ensuring we are doing everything we can to protect the health of our patients and each other.

After extensive input from our experts and careful deliberation, we have modified the timing of vaccination requirements as a condition of employment as follows:

- **All current Mass General Brigham employees must have received a complete series of COVID-19 vaccine by October 15, 2021 (both doses Pfizer or Moderna, or single dose Johnson & Johnson).** Requiring COVID-19 vaccine as a condition of employment is consistent with our approach to the influenza vaccine requirement implemented in 2018. To satisfy this requirement, you must do one of the following:
    - Get vaccinated as soon as possible. There are many community sites offering free COVID-19 vaccines. Find a convenient location in Massachusetts or New Hampshire.
    - In order to meet the October 15 deadline for Pfizer and Moderna, employees must receive their first dose of Pfizer no later than September 23, and Moderna no later than September 16. Johnson & Johnson is single dose and must be received by October 15.

> o   If you have completed your vaccination series already, you still must take action:
>
>   > o   If you were vaccinated at a Mass General Brigham site, you must provide consent to transfer
>   >       this information to Occupational Health Services here.
>   > o   If you have been vaccinated outside of Mass General Brigham, you must provide
>   >       documentation here.
>
> - **All new hires must receive vaccination clearance to work from Occupational Health beginning September
>   13**, which includes validation of a COVID-19 vaccine: first dose or both doses (Pfizer, Moderna) or single
>   dose (Johnson & Johnson). New hires who have received Pfizer or Moderna first dose vaccinations must
>   follow-up with Occupational Health after receiving their second dose for final clearance.
> - **Employees seeking an exemption for medical or religious reasons for the COVID-19 vaccine must submit a
>   request by September 3.** Access the medical exemption request form. Access the religious exemption
>   request form.
>
> We remain fully committed to supporting our colleagues who may have concerns about receiving the vaccine and
> have developed guidance to help answer questions, including those related to possible side effects and
> recommendations for pregnant women. As always, employees are strongly encouraged to discuss specific questions
> with their healthcare providers.
>
> Thank you for getting vaccinated. Together, we are creating the safest environment possible.
>
> Anne Klibanski, MD

27.    In response to its Covid Vaccine Mandate, MGB received 426 requests for medical

exemptions from employees, and MGB granted 234 of those medical exemption requests. *See,

Together Employees* v. *Massachusetts General Brigham Inc*., 573 F. Supp.3d 412, 437 (D. Mass.

November 10, 2021).

**Ms. Vasques' Request for a Medical Exemption.**

28.    Ms. Vasques suffers from multiple sclerosis (MS).  As defined by the National MS

Society, Multiple sclerosis is a disease that impacts the brain, spinal cord and optic nerves, which

make up the central nervous system and controls everything we do. The exact cause of MS is

unknown, but we do know that something triggers the immune system to attack the CNS. The

resulting damage to myelin, the protective layer insulating wire-like nerve fibers, disrupts signals

to and from the brain. This interruption of communication signals causes unpredictable symptoms

such as numbness, tingling, mood changes, memory problems, pain, fatigue, blindness and/or

paralysis. Everyone's experience with MS is different and these losses may be temporary or long

lasting.  (https://www.nationalmssociety.org/What-is-MS)

29.     Ms. Vasques suffers from relapsing remitting multiple sclerosis (MS), which has been in remission for years; but, due to the unpredictable nature of MS and the various and often unknown triggers for relapses in people with MS, she remains at risk of suffering a relapse from anything that could potentially incite her immune system in an adverse way, such as a vaccination, especially one that has not been adequately tested on persons with MS.

30.     In both 2016 and 2018, because of her relapsing remitting MS, Ms. Vasques requested that MGB grant her a medical exemption from MGB's influenza vaccine requirement.  Ms. Vasques made these bi-yearly exemption requests as part of the required credentialing process. MGB approved Ms. Vasques' requests for medical exemptions from the influenza vaccine requirement both in 2016 and in 2018.

31.     Again, in September 2020, because of her relapsing remitting MS, Ms. Vasques requested that MGB grant her a medical exemption from MGB's influenza vaccine requirement. In support of her request, Ms. Vasques submitted a September 11, 2020, letter from her neurologist, Dr. Jonathan W. Martin, MD, stating that she should be allowed to omit the vaccination (attached as *Exhibit 8*). On October 7, 2020, MGH approved this third request by Ms. Vasques for a medical exemption from the influenza vaccine requirement, stating:

**From:** Macdonald, Kaitlin Elizabeth,N.P. [mailto:KEMACDONALD1@PARTNERS.ORG]
**Sent:** Wednesday, October 07, 2020 2:05 PM
**To:** Vasques, Colleen <Colleen_Vasques@MEEI.HARVARD.EDU>
**Subject:** flu exemption request

Hi Colleen,

Your request for a medical exemption from the flu vaccine has been approved. I have updated your OHS record and it will import into PeopleSoft in 24-48 hours.

Please let me know if you have any questions.

Thank you,
Kaitlin

Kaitlin Macdonald, MSN, ANP-BC, COHN-S
Director, MGH Occupational Health Services
Associate Director, MGB Occupational Health Services
Human Resources | Workplace Health and Wellness | Occupational Health
Mass General Brigham HealthCare System
165 Cambridge Street, Suite 404| Boston, MA 02114
phone: 617-724-3905| fax: 617-724-3944 | kemacdonald1@partners.org

**Confidentiality Statement:**

32.     On September 1, 2021, Ms. Vasques submitted a request for a medical exemption from MGB's Covid-19 Vaccine Mandate, attached hereto as ***Exhibit 9***, stating in pertinent part:

> Other medical reasons (Please describe below): Requests will be reviewed on a case-by-case basis. Clarification from the requesting employee and/or their physician may be requested in writing or by phone.
> Colleen has a hx. of relapsing remitting multiple sclerosis (MS) and has been in remission for years. She does not want to risk activating her immune system with a vaccine, in case it might cause a relapse of her MS.

33.     Despite MGB approving three influenza vaccine exemption requests to Ms. Vasques based on her MS, Ms. Vasques working through the pandemic since March 2020 without any issues stemming from the COVID-19 virus or working without the vaccine, and the doctors in her office expressing no concerns about her not taking the Covid vaccine, MGB denied Ms. Vasques' COVID-19 vaccine exemption request on September 9, 2021, claiming that the medical information provided did not contain a sufficient medical reason or contraindication to support an exemption.

34.    In an e-mail dated September 10, 2021, Ms. Vasques appealed the exemption denial

and provided additional information regarding her inability to risk receiving a Covid vaccine given

her relapsing remitting MS, stating as follows:

TO: **MGB-Partners Occupational Health Services**
FROM: **Colleen Vasques** (Employee ID #100561003)
RE: **Follow up to request for medical exemption from Covid 19
vaccine requiremen**t
DATE: **09/10/2021**

Due to your previous decision to deny my request for a medical exemption from the
requirement to obtain a Covid 19 vaccination, I want to send further details about my
medical history regarding my autoimmune disease (MS) for your consideration., since I
did not include any of this in the few lines provided on the required form that I previously
submitted.

I was first diagnosed with relapsing remitting multiple sclerosis (MS) in 1998, when I
awoke one day with numbness down the entire right side of my body and double vision
(since my left eye would not track to the left). I was unable to drive because of my vision
& numbness in my right/driving foot, and it was the scariest thing to not know whether it
would go away. Fortunately, a pro-active neurologist offered to start me on IV steroids
the day after my MRI confirmed lesions/plaques in my brain that were consistent with
MS, and the symptoms subsided in about 2 weeks.

I initially tried to just do an "MS diet" in the hopes of avoiding the need for immune
system altering medications, but when I suffered a slight relapse the following year, I
began taking a beta-interferon injection (Avonex) in 1999, which was a once-a-week
intramuscular injection. Having a fear of needles, I would usually have my sister (who is
a nurse) or my coworker (an allergy nurse) give me the injections on Friday afternoon or
evening so that the slight flu-like symptoms from the shot would occur mostly overnight
on Friday and not affect my ability to work. On the rare occasions when I was forced to
do the shot myself (like when I was away on vacation), I would hyperventilate and
nearly faint from anxiety.

About 5 years into my MS medication regimen, I had another slight relapse; so my
neurologist ordered some bloodwork that showed that my body had developed
**"neutralizing antibodies"** to the interferon medication, so I was forced to switch to the
only non-interferon therapy available at the time (in 2004 or 2005), which was
Copaxone (a daily, subcutaneous injection). Thanks to the automatic injection device, it
was *slightly* less traumatic than the intramuscular injection had been (on the few
occasions that I was forced to do it myself).

Unfortunately, after 8 years of daily Copaxone subcutaneous injections, I became unable to find enough spots on my body that didn't have either a hard lump under the skin or the adipose tissue eaten away by the medication. So in 2013, I reluctantly began taking one of the new oral MS drugs. There were 3 of them available at the time; but all of them had only been FDA approved for a year or two, and all of them listed some pretty serious potential adverse side effects. I decided to try Tecfidera, since it seemed to have the least scary potential side effects; and I remained on that medication for 1 year, until my neurologist (Dr. Jonathan Martin) heard of a death from a rare brain

infection of someone taking that medication and advised me to try switching to another oral medication.

Since I had been essentially symptom-free and had stable MRIs for several years at that point (in 2014), I asked Dr. Martin if I could try going without any medication. He said that sometimes people with MS can go into a long-term remission and that I could certainly try going without medication to see if that would be the case for me. But he stressed the importance of calling him if I noticed ANY signs of a relapse, so that we could find a different medication to put me on ASAP. He also orders an MRI on me every 2 years to look for any "silent" disease progression, of which there has been none since I stopped the medications almost 7 years ago.

I feel that I cannot risk activating my immune system (with a Covid 19 vaccination) in such a way as to potentially precipitate a relapse that might require me to begin taking expensive medications again that also have some serious side effects or that might cause my disease process to resume and result in some level of physical disability that might not allow me to work (or function normally in daily life) anymore. **I already have an approved medical exemption in place for the annual flu shots** (which is in my HR record) for the same reason, and I don't understand how anyone can think that these VERY new Covid 19 vaccinations do not pose an equal if not potentially greater risk to those of us with autoimmune diseases already.

I respectfully request that you reconsider your decision, in light of the above history of my MS disease process and my current state of remission, which I fear will be in jeopardy if I were to take any of the Covid 19 vaccinations.

Sincerely,
Colleen Vasques, M.S. CCC-A
Consulting Audiologist for MEEA Weymouth

35.     On September 18, 2021, MGB denied Ms. Vasques' request for reconsideration, again citing the same reason.

36.     Ms. Vasques had the opportunity to speak to an anesthesiologist and the chief medical officer for MEEI after receiving the denial.  Ms. Vasques explained to him that she had a unique work situation of having the second floor of the Weymouth office building to herself since her

11

ENT doctors and all the other staff members worked downstairs, minimizing contact with other MGB employees.

37.    Given the nature of audiology testing, Ms. Vasques also had only approximately 3-7 minutes of direct patient contact during an audiology test since patients spend the majority of the testing time isolated in a sound booth while Plaintiff monitored the tests from the other side of the metal and glass wall.

38.    Ms. Vasques further advised the CMO for MEEI that she would always keep her office door closed, continue to wear a mask for as long as it was deemed necessary, and offered to take COVID-19 tests.

39.    Additionally, the other employees in Plaintiff's Weymouth facility did not require an exemption and were vaccinated, all employees and patients in the office wore masks, and space existed for social distancing given the setup and floorplan of the office.

40.    The CMO for MEEI, without any justification, responded that Ms. Vasques' isolated work environment or any other accommodations that she might offer were completely irrelevant. He claimed it was safer to receive the Covid shot than to become infected with the virus, but he did not offer any data regarding people with Ms. Vasques' disability of MS that would support that assertion.

41.    As such, on November 1, 2021, Ms. Vasques sent the following correspondence to MGB pleading again that her medical exemption request be granted and protesting her impending wrongful termination:

TO: Mass General Brigham Occupational Health Services
FROM: Colleen Vasques, M.S. CCC-A (contracted audiologist for Mass Eye & Ear
Weymouth)
DATE: November 1, 2021
RE: Impending Termination of My Professional Agreement by MGB

To the panel of nameless individuals who were responsible for reviewing exemption requests
(regarding the Covid 19 vaccine mandate for all employees & professional contractors) for
MGB:

Pursuant to your rejection of my request for medical exemption, which I submitted because of
my autoimmune disease/neurologic condition (MS), I have been informed by you that my
professional agreement/contract to provide diagnostic audiology services to the ENT physicians
at Mass Eye & Ear Weymouth will be terminated this coming Friday (11/05/21). The physicians
in the ENT practice (Doctors Cathy Chong, Hani Ibrahim, Amee Dharia & Bridget Burgess) for
whom I have worked for the past 11 years (except Dr. Burgess, who is our newest physician)
were as stunned as I was at your rejection of my very reasonable request for the exemption.

Since I already have an approved medical exemption in place for the annual flu shot
requirement **(see attached email acknowledgement that I received from MGB's
Occupational Health Services in the fall of 2020)** for the very SAME reason that I do NOT
want to risk receiving any of the Covid 19 shots (not wanting to potentially incite my immune
system in such a way that might result in a relapse of my MS), it seemed inconceivable to me (&
my ENT physicians) that you would NOT grant me the medical exemption from the C19 vaccine
mandate. Yet as incongruous as it is (given my flu shot exemption), you did in fact deny my
eminently justifiable request.

When I spoke with Dr. Aalok Agarwala (the chief medical officer for MEEI) after receiving that
denial, I explained to him my somewhat unique situation of having a floor of the office building
all to myself (other than the lunchroom and the completely separate doctor's office across the
hall), since my ENT doctors and all the other staff members work downstairs. Given the nature
of audiology testing, I also have VERY little direct patient contact (just a couple of brief minutes
at the beginning & the end of the test), since the patients spend most of the time isolated in the
sound booth. I also told Dr. Agarwala that I could keep my office door closed at all times and
would continue to wear a mask for as long as it was deemed necessary. I even offered to take a
weekly Covid 19 test, but he said that my uniquely isolated work environment or any other
accommodations that I might offer were completely irrelevant (which I should have known, since
even people working remotely are required to comply with the mandate, for some inexplicable
reason). Unless I was able to obtain a letter from my neurologist requesting the exemption, Dr.
Agarwala was not willing to "plead my case" to the MGB panel, as he knew that it would be a
waste of his time. Even with a note from my neurologist, I suspect that it would still be a waste
of time to try to argue my case, since I am aware of people who had notes from their physicians
but were still rejected by the panel for their medical exemption requests (since the members of
the panel clearly believe that they are better qualified than one's own physician to decide such
matters).

Mass General, Brigham & Women's and Mass Eye & Ear Infirmary have been recognized as the
"best of the best" hospitals in the world for decades, and rightfully so, which is why it is SO
surprising to me that MGB has decided to forge ahead with the vaccine mandate, despite the
evolving science that is demonstrating the folly of that position. A recent study at UC Davis

found that vaccinated people have just as much Covid 19 viral load in their nasopharynx as unvaccinated people. A significant percentage of patients being hospitalized with Covid 19 (and some resulting in death) over the past several months in some highly vaccinated countries (like Israel & Ireland) and even in some places in the US (like Illinois just last month) are fully vaccinated people, so the Delta variant is not just a "pandemic of the unvaccinated" as some people are so fond of saying.

There are well respected epidemiologists & virologists (such as **Geert Vanden Bossche**) who believe that the mass vaccination programs using these non-traditional vaccines are actually accelerating the development of variants that can evade the scope of these shots (**see attached summary of his rationale & evidence,** which can also be found on his website **GeertVandenBossche.org).** So these widespread vaccine mandates may actually be doing the exact opposite of what you hope to achieve by prolonging (instead of shortening) the pandemic, and by not allowing natural herd immunity to occur. It seems more likely that the significant overuse of the vaccines and the concurrent gross underuse of widely available & very effective **early treatments** have been the driving forces behind this seemingly never-ending pandemic.

**Rochelle Walensky**, your former colleague and the current CDC director, **has publicly stated that the _vaccines don't prevent people from contracting or transmitting Covid 19_**; so if vaccinated people are just as likely to spread the virus as unvaccinated people, then your justification for requiring your employees & contractors to get one of the vaccines (ostensibly to "protect others") is no longer scientifically defensible. An intelligent person might actually conclude that vaccinated people are more likely to spread the virus to others, since they are more likely than unvaccinated people to be asymptomatic (at least initially) because of the limited level of protection that the Covid 19 shots purportedly provide.

I am just writing this letter to clarify that, although I will not leave "kicking & screaming" on November 5th, as that would be undignified & unnecessary (since the physicians with whom I work are NOT the ones choosing to terminate my services), I am ONLY ceasing to fulfill my contractual obligation to perform audiometric testing for the ENT physicians of Mass Eye & Ear Weymouth because YOU (Mass General Brigham) have unjustly & unethically terminated my professional agreement/contract based on your arbitrary requirement for all employees & allied health professionals to submit to your Covid 19 vaccine mandate, regardless of whether they have legitimate health concerns about receiving any of these very new shots (which have NOT been sufficiently proven to be safe, especially for people with pre-existing neurologic disorders such as I have, as evidenced by the astronomical number of adverse events reported to the VAERS reporting system and over 17,000 deaths associated with the various Covid 19 shots). **I am NOT resigning or voluntarily ending my professional agreement with Mass Eye & Ear Weymouth, but I am ONLY leaving because you have fired/terminated me.**

Respectfully (not that you deserve any),

Colleen M. Vasques

**Colleen M. Vasques, M.S. CCC-A**

14

42. MGB's Covid Vaccine Policy in effect October 22, 2021, specified that "Underlying medical conditions including myocarditis or pericarditis, *autoimmune diseases*, Guillain-Barré Syndrome, and Bell's palsy" should be "considerations" under "Indications for temporary deferral of Covid-19 Vaccination."  Attached as ***Exhibit 10*** (emphasis added).

43. Therefore, as Plaintiff suffered from a disability constituting an autoimmune disease, MS, her condition should have been considered under MGB's own COVID Vaccine policy for an exemption.

44. Nonetheless, MGB fired Ms. Vasques in violation of the ADA, ADAAA and related Massachusetts state law because she would not risk receiving the Covid vaccine, issuing her the termination letter attached hereto as ***Exhibit 7***.

45. MGB additionally failed to engage in the interactive process and did not discuss reasonable accommodations with Ms. Vasques and, instead, dismissed her requests for reasonable accommodations and her attempts to discuss such available, reasonable accommodations, given her unique work situation at the Weymouth office.

## CAUSES OF ACTION

### COUNT I
**Violation of the Americans with Disabilities Act, 42 USC § 12101, *et seq.*
Disability Discrimination – Failure to Accommodate**

46. Ms. Vasques incorporates all paragraphs above and below as if set forth fully herein.

47. Ms. Vasques could have continued to complete all functions of an audiologist at MGB despite the facts that she suffers from MS and could not risk receiving the COVID-19 vaccine as a result.

48.     Ms. Vasques' continued employment at MGB under such circumstances would not have caused any undue hardship on MGB.

49.     The ADA and ADAAA require employers to engage in the interactive process and offer reasonable accommodations for employees with disabilities. *See* 42 USC § 12112.

50.     Plaintiff is a qualified individual with a disability.

51.     Defendant was aware of Plaintiff's disability.

52.     Defendant failed to reasonably accommodate Plaintiff's disability.

53.     Defendant failed to engage in the interactive process with Plaintiff regarding Plaintiff's disability and Defendant's Vaccine Mandate.

54.     Irrespective of the interactive process, Defendant failed to provide Plaintiff with a reasonable accommodation.

55.     Defendant's failure to provide a reasonable accommodation has harmed and will continue to harm Plaintiff.

56.     Plaintiff's disability was the basis for Defendant's discriminatory treatment.

57.     Accommodating Plaintiff's disability would not have resulted in an undue hardship on Defendant or its business.

58.     By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of the ADA.

59.     As a result of Defendant's discriminatory actions, Plaintiff is entitled to all damages as provided by 42 USC § 12101 and common law including but not limited to emotional and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, punitive damages,

lost wages and income (including back pay and front pay), and other benefits to which she was entitled, an amount to be determined at trial.

**COUNT II**
**Violation of the Americans with Disabilities Act, 42 USC § 12101, *et seq.***
**Perceived Disability Discrimination**

60.     Ms. Vasques hereby restates and reincorporates the foregoing paragraphs of this Complaint as if fully stated herein.

61.     The ADA and ADAAA prohibit employers from discriminating against an employee on the basis of her disability. *See* 42 USC § 12112.

62.     The ADA prohibits employers from regarding employees as disabled. *See* 42 USC § 12102.

63.     Defendant perceived Plaintiff to be disabled because MGB previously granted Plaintiff's influenza vaccine exemption requests and Plaintiff was unable to receive a COVD-19 vaccination due to her MS.

64.     Plaintiff was qualified to perform her job with or without a reasonable accommodation.

65.     Plaintiff suffered an adverse employment action.

66.     Defendant knew or had reason to know about Plaintiff's inability to risk receiving the COVID-19 vaccination due to her MS.

67.     Plaintiff's perceived disability was the basis for Defendant's discriminatory treatment and firing of her.

68.     As a result of Defendant's discriminatory actions, Plaintiff is entitled to all damages as provided by 42 USC § 12101 and common law including but not limited to emotional and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, punitive damages,

lost wages and income (including back pay and front pay), and other benefits to which she was entitled, an amount to be determined at trial.

## COUNT III
### Discrimination on the Basis of Disability and Failure to Accommodate - M.G.L. c. 151B

69.     Ms. Vasques incorporates all paragraphs above and below as if set forth fully herein and she could have continued to complete all functions of an audiologist at MGB despite the facts that she suffers from MS and could not risk receiving the COVID-19 vaccine as a result.

70.     Ms. Vasques' continued employment at MGB under such circumstances would not have caused any undue hardship on MGB.

71.     During all relevant periods, MGB employed six or more persons and is an employer under the definition of M.G.L. c. 151B.

72.     MGB's conduct, including but not limited to its failure to engage in the interactive process, provide reasonable accommodations, and termination of Ms. Vasques, as described in more detail in the foregoing paragraphs, constitutes disability discrimination and violates M.G.L. c. 151B.

73.     As a direct and proximate result of Defendant's refusal to allow Plaintiff to work with or without a reasonable accommodation, failure to engage in the interactive process, and unlawful firing of her because she could not risk receiving the COVID-19 vaccine due to her disability of MS, Plaintiff has suffered and continues to suffer damages, including but not limited to a loss of wages, and severe emotional distress.

74.     As a result of the foregoing, Plaintiff has in the past, and will in the future, suffer harm and damages, including, but not limited to loss of wages and other benefits, loss of professional opportunities and development, harm to her reputation, considerable emotional distress,

humiliation, stress and anxiety, pain and suffering, other pecuniary and nonpecuniary losses, punitive damages, attorneys' fees, and costs.

## COUNT IV
### Discrimination on the Basis of Disability and Failure to Accommodate - Massachusetts Employment Rights Act, MGL c. 93, s. 102

75.    Ms. Vasques incorporates all paragraphs above and below as if set forth fully herein and pleads Count IV in the alternative in the event she is ultimately determined to have been an independent contractor of MGB, despite the facts that she worked full time as an audiologist solely for MGB (and no one else) and she did the same diagnostic testing provided by the audiologists that MGB deemed to be employees, only she worked without the  benefits afforded to MGB employees.

76.    Ms. Vasques could have continued to complete all functions of an audiologist at MGB despite the facts that she suffers from MS and could not risk receiving the COVID-19 vaccine as a result.

77.    Ms. Vasques' continued services at MGB as an employee or independent contractor under such circumstances would not have caused any undue hardship on MGB.

78.    In Massachusetts, independent contractors remain entitled to bring claims under the Massachusetts Equal Rights Act, rather than under Chapter 151B.

79.    MERA, the Commonwealth's analogue to federal §1981, protects the rights of individuals in the Commonwealth to make and enforce contracts.

80.    The Commonwealth's appellate courts have made clear that where there is no available remedy under §151B, an individual may bring discrimination claims under MERA.

81.     Thus, MERA covers other categories of workers who fall outside of the protections of §151B, including independent contractors.

82.     As such, in the event Plaintiff is precluded from bringing §151 or ADA claims, MGB discriminated against Ms. Vasques on the basis of her disability of MS, unlawfully failed to engage in the interactive process and/or provide reasonable accommodations, and violated her rights under MERA when it refused to allow her to continue to provide audiology services in MGB facilities because she would not risk receiving the COVID-19 vaccine due to her disability.

83.     As a result of Defendant's violations of MERA, Ms. Vasques has suffered and is entitled to damages, including but not limited to: lost earnings and revenue, liquidated damages, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Vasques respectfully requests that the Court enter the following relief:

1. Find the Defendants liable on all counts;

2. Award Ms. Vasques monetary damages, including, but not limited to, back pay, lost compensation and benefits, and front pay;

3. Award Ms. Vasques compensatory damages;

4. Aware Ms. Vasques damages for emotional distress, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

5. Award Ms. Vasques damages for harm to reputation and reduced earning capacity;

6. Award Ms. Vasques punitive damages;

7. Award Ms. Vasques her reasonable attorney's fees;

8. Award Ms. Vasques interest and costs;

9. Award Ms. Vasques all other damages including reemployment to which she is entitled; and

10. Grant such further relief as is just and equitable.

Dated: December 29, 2022     Respectfully Submitted,

              PLAINTIFF,

              COLLEEN VASQUES,

              By her attorneys,

              */s/ Brian Benestad*

              Brian Benestad, Esq.

              BBO #673787

              Katherine Davenport, Esq.

              BBO #647467

              HKM EMPLOYMENT ATTORNEYS LLP

              10 High Street, Suite 401

              Boston, MA 02110

              (Tel) 412-485-0133

              bbenestad@hkm.com

              kdavenport@hkm.com